E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KELLY LAROCQUE (Cal. Bar No. 337912)
Assistant United States Attorney
General Crimes Section
1200 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-3308
Facsimile: (213) 894-0141
E-mail: kelly.larocque@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

NEVAEH ROSA YBARRA,

Defendant.

No. CR 2:23-CR-00113-SVW

GOVERNMENT'S SENTENCING POSITION; DECLARATION OF KELLY LAROCQUE; EXHIBITS 1—3

Hearing Date: June 26, 2023
Hearing Time: 11:00 AM
Location: Courtroom of the Hon. Stephen V. Wilson

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Kelly Larocque, hereby files its Sentencing Position.

//

//

This Sentencing Position is based upon the attached memorandum of points and authorities, the Presentence Investigation Report, the files and records in this case, the attached declaration and exhibits, and such further evidence and argument as the Court may permit.

Dated: June 12, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

/s/

KELLY LAROCQUE
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

On March 1, 2023, Nevaeh Rosa Ybarra ("defendant") withdrew $16,460 in cash benefits from Electronic Benefit Transfer ("EBT") accounts belonging to other people, without their authorization. These benefits were intended for low-income California residents to help pay for expenses, such as housing, utilities, medical care, and food. Upon her arrest, defendant had $11,792.74 in cash and 17 cloned EBT cards.[1] The government accordingly charged defendant with bank fraud, aggravated identity theft, unlawful use of unauthorized access devices, and possession of fifteen or more unauthorized access devices.[2] (Indictment, ECF No. 9.)

On May 1, 2023, defendant pleaded guilty to unlawful use of unauthorized access devices and possession of fifteen or more unauthorized access devices (counts 6 and 7; violations of 18 U.S.C. §§ 1029(a)(2), (a)(3)). (ECF No. 16.) The government concurs with the United States Probation and Pretrial Services Office (the "USPPO") and recommends that the Court: (1) order defendant to pay $16,460 in restitution; (2) impose a sentence of 5 months' imprisonment followed by a 3-year term of supervised release during which defendant shall reside in a residential reentry center for 5 months; and (3) impose a $200 special assessment but no fine. This sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

---

[1] Cloned cards are cards that have been re-encoded with account information that does not match the account number or other visible characteristics on the front of the card.

[2] Violations of 18 U.S.C. §§ 1344(2), 1028A(a), 1029(a)(2), and 1029(a)(3)

## II. STATEMENT OF FACTS

On March 1, 2023, defendant used cloned cards, meaning cards that had been re-encoded with stolen EBT account numbers and corresponding personal identification numbers ("PINs"), to withdraw cash benefits from EBT accounts belonging to other people, without their authorization. (Plea Agreement at 10, ECF No. 14; Presentence Investigation Report ("PSR") ¶ 12, ECF No. 18.) Within one hour, defendant performed 29 transactions, using 26 different stolen EBT account numbers and associated PINs, across three different ATMs. (Plea Agreement at 10; PSR ¶ 13.) She performed these transactions while a 14-year-old boy stood next to her, (PSR ¶ 14), looking furtively over his shoulder. Another minor (age 17) remained in the backseat of defendant's car, (PSR ¶ 15), with $18,105 cash and 18 cloned EBT cards hidden in her clothing, three of which defendant used to make three of the unauthorized transactions.

From the ATMs, defendant successfully withdrew $16,460 and attempted an additional $2,070 in transactions (the "unauthorized transactions"). (PSR ¶ 14.) These transactions are highlighted in the attached exhibits. (See Larocque Decl. ¶¶ 2—4; exs. 1—3 (bank records).) Defendant's unauthorized transactions impacted at least 26 victims as each account that she accessed was tied to a different victim. (Plea Agreement at 10—11; see PSR ¶ 13.)

Upon her arrest, defendant had $11,792.74 in cash[3] and 17 cloned EBT cards inside a satchel that she was wearing at the ATMs. (Plea Agreement at 11; PSR ¶ 15.) The cloned cards were Visa Vanilla-branded gift cards whose magnetic stripes had been re-encoded with

---

[3] United States Secret Service seized the $11,792.74 and forfeited it administratively.

stolen EBT account information. (Id.) The cards also had stickers with associated PINs handwritten on them. (Id.) Defendant used these cards, account numbers, and PINs to make the unauthorized transactions. (Plea Agreement at 11.) Due to defendant's conduct, at least some victims were forced to visit food banks, incur financial penalties for late payment of rent and other bills, and borrow money from friends and family to purchase necessities. (Id.)

**III. THE USPPO'S GUIDELINES CALCULATION AND RECOMMENDATION**

On June 5, 2023, the USPPO filed its Presentence Investigation Report and Recommendation Letter. (Letter & PSR, ECF Nos. 17, 18.) Therein, the USPPO determined that because defendant has no documented criminal history, her criminal history category is I. (PSR ¶¶ 41, 44.) It also determined that defendant's total offense level is 12 based on the following calculation:

| | | |
|---|---|---|
| Base offense level: | 6 | U.S.S.G. § 2B1.1(a)(2) |
| Loss amount > $15,000: | +4 | U.S.S.G. § 2B1.1(b)(1)(C) |
| 10+ victims: | +2 | U.S.S.G. § 2B1.1(b)(2)(A)(i) |
| Authentication feature: | +2 | U.S.S.G. § 2B1.1(b)(11)(A)(ii) |
| Acceptance of Responsibility: | -2 | U.S.S.G. § 3E1.1 |
| **Total offense level:** | **12** | |

(PSR ¶ 22—39.) The USPPO declined to apply an adjustment for using a minor to commit the crime, concluding that "it cannot be determined whether [the minors'] presence was incidental," or if defendant "otherwise involved or collaborated with the minors." (PSR ¶ 34.)

Based on these calculations, the applicable Guidelines range is 10 to 16 months. (PSR ¶ 71.) This term may be satisfied by a "sentence of imprisonment that includes a term of supervised release

with a condition that substitutes community confinement or home detention . . . provided that at least one-half of the minimum term is satisfied by imprisonment." U.S.S.G. § 5C1.1(d). The USPPO recommends a sentence at the lowest end of the Guidelines range: 10 months split between a 5-month term of imprisonment and 5 months in a residential reentry center. (Letter at 2—3.) The USPPO did not identify any factors warranting a departure or variance from the Guidelines range. (PSR ¶¶ 85, 86.)

The USPPO also recommends that the Court impose the maximum term of supervised release: 3 years. (Letter at 2); see 18 U.S.C. § 3583(b)(2). Based on defendant's apparent inability to pay, the USPPO does not recommend imposing a fine. (PSR ¶ 67.) But it found that the Court should order restitution in the amount of $16,460, payable in monthly installments and owed to the California Department of Social Services. (PSR ¶ 83); see 18 U.S.C. § 3663A; U.S.S.G. § 5E1.1.

**IV. THE GOVERNMENT'S GUIDELINES CALCULATION AND RECOMMENDATION**

The government agrees with the USPPO's calculation and joins in its sentencing recommendation. The following sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a): 5 months' imprisonment followed by a 3-year term of supervised release during which defendant shall reside in a residential reentry center for 5 months; an order to pay $16,460 in restitution; a $200 special assessment; and no fine.

**A. Term of Imprisonment**

Regarding the nature of the offense, defendant stole money from some of our community's most vulnerable: low-income residents who rely on welfare benefits for housing, utilities, medical care, and

food. In just one hour, defendant took a total of $16,460 from 26 victims. These victims were therefore unable to access the money disbursed to their accounts, and some victims were forced to visit food banks, incur financial penalties for late payment of rent and other bills, and borrow money from friends and family to purchase necessities. A sentence within Guidelines range reflects the nature and seriousness of this offense, and the need to protect vulnerable members of the public from these crimes. See 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), (C) (listing relevant sentencing factors). It also provides adequate deterrence to both defendant and others engaged in this type of fraud. See 18 U.S.C. §§ 3553(a)(2)(B) (The imposed sentence needs "to afford adequate deterrence to criminal conduct," which encompasses both specific and general deterrence.).

Defendant's history and characteristics support a sentence at the low-end of the Guidelines range. Defendant is 19 years old, has no criminal history, and timely accepted responsibility for her conduct. Her unstable upbringing appears to have made her susceptible to becoming involved in criminal conduct. (See PSR ¶ 49–56.) These mitigating factors support a low-end sentence but do not justify a downward variance because a sentence at the low-end of the Guidelines range adequately balances both the nature of the offense and the history of the defendant.

**B. Term of Supervised Release**

Under the Guidelines, a "term of supervised release must be imposed if the court wishes to impose a 'split sentence' under which the defendant serves a term of imprisonment followed by a period of community confinement or home detention." U.S.S.G. § 5B1.1, Application Note 4. A three-year term of supervised release is

warranted here. Given that this criminal conduct significantly impacts vulnerable members of our community, three years of supervision would help protect the public from further crimes of the defendant. 18 U.S.C. § 3583(c). It will provide accountability to this young, first-time offender, affording adequate deterrence against additional criminal conduct. Id.

### C. Restitution

The Court should also order restitution in the amount of $16,460. A restitution order is mandatory in this case. See 18 U.S.C. § 3663A. And $16,460 is the proper amount because it is the actual loss to the California Department of Social Services ("DSS"). Defendant successfully withdrew a total of $16,460 from the EBT accounts of various welfare recipients, as reflected in ATM records from each bank. (See Larocque Decl. ¶¶ 2—4; exs. 1—3.) Because DSS reimburses the recipients, it is the ultimate victim entitled to restitution.

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court impose the following sentence: an order to pay $16,460 in restitution; 5 months' imprisonment followed by a 3-year term of supervised release during which defendant shall reside in a residential reentry center for 5 months; a $200 special assessment; and no fine.